## COLGATE & ABBE, *qui tam, v.* GEORGE W. HILL.

Under the statute of this state,—Rev. St. chap. 10, sec. 9,—the county court may take jurisdiction of, and try by jury of the county, a *qui tam* action, brought by a common informer to recover the penalty for a fraudulent conveyance, notwithstanding one half of the penalty, if recovered, is given, by statute, to the county within which the court is held.

The county court have power to discharge the bail taken upon the review of an action, upon the substitution of other sufficient and satisfactory bail; and the bail thus substituted will be holden for the cost and intervening damages accruing from the time the review was granted.

But an application to change bail taken upon a review is addressed to the discretion of the county court ; and the decision of that court, in refusing to exercise the power vested in them, is not subject to revision, upon exceptions, by the supreme court.

This was an action to recover the penalty given by statute for being party to a fraudulent conveyance of personal property ; and the county court instructed the jury, that if the conveyance of the property was made, on the part of the vendor, in bad faith, and with an intent to withdraw the property from the reach of his creditors and to avoid their rights, and that the defendant was privy to such intent and lent himself to the vendor to aid him in withdrawing his property from the reach of his creditors, to avoid their rights, and justified the same to have been made *bona fide* and upon good consideration, the defendant was liable to the penalty, notwithstanding they should find, that he paid a full consideration for the property ,—and it was held, that herein there was no error.

THIS was an action to recover the penalty given by the statute for receiving a fraudulent conveyance. It was alleged in the declaration, that the defendant had received of one Horace Cook a fraudu-

Colgate et al. *q. t. v.* Hill.

lent conveyance of certain personal property; and the plaintiff sued as well in behalf of himself as of the county of Chittenden. Plea, the general issue, and trial by jury, September Term, 1846,—BEN-NETT, J., presiding.

The defendant objected, that the court and jury could not try this cause, upon the ground that they were all payers of county taxes in the county of Chittenden, and still liable to pay such taxes; and the fact, that they were so, was conceded. The objection was overruled.

On trial the defendant offered Thomas C. Hill as a witness to prove material facts in the defence. It appeared, that the witness had indorsed the writ, in this suit, as bail for the defendant upon his arrest, and also that he had entered into a recognizance for a review of the cause, on the part of the defendant, at a former term; and he was objected to for these reasons. The defendant then offered to surrender his body in court, and to procure and enter in court other good and sufficient bail for the review in the place of the witness, and prayed the court to receive such bail and discharge the witness. The plaintiffs objected to receiving other bail in substitution of the witness, and insisted, that, as matter of law, such substituted bail would not be liable to the same extent with the witness. The defendant then offered, that such substituted bail should enter into a special recognizance to become liable to the same extent as if originally entered upon the review. The court, expressing some doubt in regard to the propriety of discharging the bail for the review, and in regard to the extent of the liability of new bail, that might at this time be entered, decided, in their discretion, that they would not order the bail for the review to be discharged and new bail taken; and therefore the witness was excluded.

The defendant, among other things, gave evidence tending to prove that the property, alleged in the declaration to have been conveyed by Cook to him, was sold to him *bona fide*, and upon good and adequate consideration paid by him to Cook. The plaintiffs, among other things, gave evidence tending to prove, that the sale of the goods to the defendant was made for the purpose of avoiding the rights of the creditors of Cook, the plaintiffs being such creditors, and that the consideration was collusive and designed to cover a conveyance that was fraudulent in fact.

8

Colgate et al. *q. t. v.* Hill.

The court instructed the jury, among other things not excepted to, that if they found, that the conveyance of the property from Cook to Hill was made, on the part of Cook, in bad faith, and with an intent to withdraw the property from the reach of his creditors and to avoid their rights, and that the defendant, when he took the conveyance, was privy to such intent and lent himself to Cook to aid him in withdrawing his property from the reach of his creditors, to avoid their rights, and justified the same to have been made *bona fide* and upon good consideration, the defendant was liable to the statute penalty, notwithstanding they should find, that Hill paid to Cook a full and adequate consideration for the property.

The jury returned a verdict for the plaintiff. Exceptions by defendant.

*Lyman & Chittenden* for defendant.

1. The county of Chittenden is a party to this record, and equally interested with Colgate & Abbe in the result of the suit. No inhabitant of the county could be a witness in the case, without the action of the legislature; Slade's St. 107, § 26; and it has long been held, that a less degree of interest, or bias, was necessary to disqualify a juror, than a witness. *Rex v. Prosser et al.*, 4. T. R. 17. We insist, that the same rule applies in this case, that would, if the action were brought for the benefit of a private corporation. The rule requiring the judge to be free from all interest in a suit, which he is to try, has rarely been departed from. 1 Salk. 395. *Day v. Savadge*, Hob. 87. *Wood v. Mayor of London*, 1 Salk. 397. 4 Com. Dig. 436, Tit. Justices. The case of *State v. Batchelder*, 6 Vt. 479, stands alone, as an instance of departure from this salutary principle. But we assert, that not a solitary instance of a relaxation of this rule can be found with regard to *jurors*, who are finally to decide upon questions of fact. Const. of Vt., Art. 10, 12. WOODBURY, J., in *Rollins v. Ames*, 2 N. H. 349. *Pierce v. Shelden*, 13 Johns. 191. *Bellows v. Pearson*, 19 Johns. 172. *Hesketh v. Braddock*, 3 Burr. 1847. *Steinbach v. Columbian Ins. Co.*, 2 Caine 129. *Wood v. Stoddard*, 2 Johns. 194. *Mech. Bank. v. Smith*, 19 Johns. 121. *Lincoln v Prince*, 2 Mass. 544. *Pearce v. Atwood*, 13 Mass. 324. Federalist 432. And to sustain this position no stronger authority is required, than that of *State v. Batchelder*, 6 Vt. 479.

Colgate et al. *q. t. v.* Hill.

There is one striking characteristic of all those cases of a departure from this rule, in reference to the judge, which can be cited; they were all *criminal* cases, in which a waiver of the rule, for the purpose of promoting speedy justice, may be less important. But this is a civil action.

But it may be said, that the statute of this state becomes of no effect, if jurors of the county are incompetent. To this we answer,— 1, This action might have been brought in any county in this state, all the parties being non-residents;—2, The action is not local in its character; *Treasurer of Windsor Co.* v. *Jones*, Brayt. 148;—3, Even in this county a jury may be found, who are not tax payers, and who would therefore be competent.

2. Whenever a material witness is interested in a case as bail, in order to entitle him to a discharge it is the duty of the person, who wishes to use him, to place the other party in as good a position, as he would have been in, if the original bail stood. When this is done, the court will never refuse to discharge him; and the party asking it is entitled, as a matter of right, to such discharge. In England the practice is to discharge the bail, when a sufficient amount of money is deposited to indemnify him. *Pearcy* v. *Fleming*, 5 C. & P. 503, [24 E. C. L. 429.] *Carter* v. *Pearce*, 1 T. R. 164. *Baily* v. *Hole*, 3 C. & P. 560, [14 E. C. L. 449,] 1 Tidd 259. 2 Chit. R. 103. But this question has been settled in Vermont. *Dodge et al.* v. *Kendall*, 4 Vt. 31. Upon general principles, the case shows no reason, why the court should have refused to change the bail. 1 Greenl. Ev. §§ 392–430. Stark. Ev. Part. 4, p. 139. *Collett* v. *Jennis*, Rep. Temp. Hardw. 133. *Irwin* v. *Cargell*, 8 Johns. 318. *Tompkins* v. *Curtis*, 3 Cow. 251. *Leggett* v. *Boyd*, 3 Wend. 376. These cases are where the witness was bail for an appeal; and the liabilities of bail for an appeal and bail for a review are the same. Rev. St. 161, § 10; 174, § 47.

3. Where one receives a conveyance from another, who is indebted, and at the same time places in the hands of such person as large an amount of property, at any time subject to the control of creditors, as he withdraws from them, the effect of such a conveyance can never be to defraud creditors. The defendant is not liable, unless he justify the conveyance to have been made upon good consideration. In order to fasten his liability must not his justification

necessarily be false? We believe the statute, in its terms, only applicable to a case, where the conveyance is without consideration, when the defendant is required to justify in order to fix his liability.

*Kasson & Buckley* and *A. Peck* for plaintiffs.

1. The statute takes no notice of the means used to effect the conveyance or induce the fraud ; it looks to the end accomplished. If the *purpose* of the transaction be to defraud, the statute is violated and the penalty attaches, irrespective of the means used, inducements held out, or consideration paid, or forborne, by either party. 4 Vt. 405.   5 Vt. 530.   The jury found, that the consideration paid, whether adequate in amount, or not, was colorable, collusive, and *in fact* was subservient to the fraudulent intent.   The *intent* and the *act* both being found to be fraudulent, the *expense* which the defendant incurred, to effect the fraud, cannot now be made to protect him.   *Brooks q. t. v. Clayes et al.,* 10 Vt. 37.   *Preston v. Crofut,* (note) 1 Conn. 538.

2. It is somewhat difficult to determine, whether the English courts of common law jurisdiction derived their authority to take bail, in any case, from statutes, or not ; though it is certain, that a large share of the modes and occasions of *taking* bail in those courts have been and are the result of statutory enactment, or special *rules* of court, pursuant to statutory powers.  Tidd 239–248.  Whatever may have been the origin of such power, it was clearly confined to *bail,* as such,—the delivery of the *person* to the surety.   The object was, to procure the body of the principal to be forthcoming and avoid a contempt of the court, in refusing to respond its judgments.   In this sense the court was a party.   *Lockwood v. Jones,* 7 Conn. 431.   In *Brandijee v. Hale,* 13 Johns. 125, the court doubted, whether their circuit court would have a right to determine upon the sufficiency of the future bail, so as to discharge the previous bail ;—and this was a mere question of costs.   *Adnam v. Wilks,* 6 B. & C. 237, [13 E. C. L. 156.]   *Bramwell v. Farmer,* 1 Taunt. 427.   2 Tidd 1149, 1158.  In Massachusetts, Connecticut and Vermont recognizances have been adjudged void on account of informality and for want of power in the court to take them.   *Harrington v. Brown,* 7 Pick. 232.

A recognizance for a review is purely voluntary, and is an inde-

Colgate et al. *q. t. v.* Hill.

pendent contract *between the parties*, and for their sole benefit; it has nothing to do with the court. When once entered into, it is like a bond; and the court have no right to interfere with it, any more than they would with any other contract. Rev. St. c. 25, §§ 10, 14. If the court had merely substituted a new surety to the same verbal conditions, in case of insolvency having supervened since the previous recognizance, the new surety would not be liable. If they had exonerated Hill and taken a new recognizance with the proposed condition, it would have been void, as containing conditions not provided by statute. *Harrington v. Brown*, 7 Pick. 232. *Anon.*, 1 Salk. 100.

It was at least discretionary with the court to allow the party to release a witness whom he had voluntarily tied up. *Hiecock v. Hiecock*, 1 D. Ch. 133.

3. The jurisdiction is conferred upon the county court by statute. The offence is created by chap. 96, sec. 20, of the Rev. St., entitled "Of offences against private property." By Tit. 23, "Of crimes and punishments," chap. 102, § 3, it is provided, that the trial shall be had in the county where the crime is committed. But if this be called a suit, it comes under the general provision of the Rev. St. ch. 28, § 180; and by chap. 10, § 9, the county court has jurisdiction in all cases, where the county is a party. *State v. Batchelder*, 6 Vt. 479. *Hill v. Wells*, 6 Pick. 104. *Commonwealth v. Ryan*, 5 Mass. 90. *Brown v. Somerset*, 11 Mass. 221. *Com'rs of Claremont v. Lytle*, Ohio Cond. R. 581, [3 Ham. 287.] *Davis v. Salisbury*, 1 Day 278. *Justices v. Hammond*, Cox 190, [1 U. S. Dig. 628, § 23.] *Slack q. t. v. Gibbs*, 14 Vt. 357.

The opinion of the court was delivered by

KELLOGG, J. Upon the trial of this case in the court below several questions were raised, which have been elaborately discussed at the hearing in this court.

1. It is insisted, that the court and jury, who tried the case, were incompetent, by reason of interest, they being inhabitants of the county and liable to the payment of county taxes, and consequently interested in the penalty sought to be recovered.

The law creating the penalty provides, that a moiety of the sums recovered shall be paid into the county treasury, for the use of the

county. Hence it will be readily perceived, that the triers were interested in the issue submitted to them. But this, we think, constitutes no legal objection to their competency. Whatever doubts might be entertained upon the question, if there were no statutory provisions conferring jurisdiction, we apprehend none can now be held. In chap. 10, sec. 9, of the Rev. Stat. it is enacted, that " the county court, or any justice, within their respective jurisdictions, may take cognizance of any suit in favor of or against the county." To take cognizance of a suit is to try it, and try it in the manner prescribed by law;—which is, if it be an issue of fact, by a jury of the county. The suit at bar is brought by a common informer, who prosecutes for himself and the county. The county are only interested in a moiety of the penalty. If the entire penalty were given to the county, and a suit brought to recover it, the county court could manifestly take cognizance of the suit. It can, therefore, hardly be contended, that the *lesser interest*, being but for a moiety of the penalty, renders the court incompetent. This exception cannot be sustained.

2. It is farther insisted by the defendant, that the county court erred in refusing to discharge Thomas C. Hill, who had at a previous term entered into a recognizance for the defendant for a review, from his recognizance,—it being alleged, that Hill was an important witness for the defendant. The questions arising upon this part of the case are of great importance, and we are not aware, that they have ever received a judicial determination by this court. The bail for the review was not only for the costs, that might arise from the farther prosecution of the suit, but also for such *intervening damages* as might accrue by reason of the delay.

The first question, that arises upon this branch of the case, is, had the county court power to discharge the bail, as requested? That courts have been in the practice of discharging bail taken for the security of *costs*, upon the substitution of other sufficient bail, is shown by numerous authorities, and is of common occurrence. Nor are we aware, that the power of the courts, to this extent, has ever been questioned. Its exercise is often important to the due administration of justice. The case of *Tomkins* v. *Curtis*, 3 Cow. 251, shows, that in the state of New-York they discharge bail for an appeal from a justice's court to the common pleas, upon the sub-

stitution of other sufficient bail, when it becomes important to use the bail as a witness ;—but what the particular undertaking of the bail was, in that case, does not appear. It might have been for costs only, and it might have included intervening damages. If it were the latter, it would be analogous to our bail for a review. The case of *Leggett et al.* v. *Boyd,* 3 Wend. 376, is an authority to show that special bail may be changed, upon the substitution of other bail, when it becomes necessary to use the special bail as a witness. The liability of special bail, by the New-York practice, is presumed to be similar to that which prevails in the English practice, and is similar to the bail taken by the sheriff, under our law, upon an arrest of the body. It is an undertaking, " that, if the defendant be convicted, he shall satisfy the plaintiff, or surrender himself into custody." 1 Tidd 211. We are also referred to the case of *Dodge et al.* v. *Kendall,* 4 Vt. 31, as decisive of the question now under consideration. That case, however, shows nothing more, than that the witness, whom the court say might have been discharged upon application and the substitution of other bail, was recognized in the writ for the costs of prosecution. It was, therefore, the common case of bail for costs ; and the power to discharge bail in such cases has never been doubted.

But we believe, that the power of discharging bail for appeals and reviews, upon the substitution of other bail, has often been exercised by the courts of this state, and that the practice is of long standing. That such power should exist in the courts would seem to be necessary to the furtherance of justice. Often times the party cannot foresee, that the testimony of the bail will become important to him, and yet something transpires in the progress of the subsequent trial, which renders his testimony very material, and if he could not avail himself of it, the greatest injustice might be done. Nor are we aware, that the change of bail would operate as an injury to the opposite party ; as the substituted bail would be liable to the same extent as the original bail.

The result, then, to which we have come upon this point in the case, is, that the county court have the *power* to change the bail taken for a review, upon the substitution of other sufficient and satisfactory bail, and that the substituted bail will be holden for the *cost* and *intervening damages* accruing from the time the review was granted.

The next question arising in the case is, can the party demand the exercise of this power by the court as a matter of right? We apprehend he cannot; but that the application is addressed to the sound discretion of the court. If it be admitted, that he may claim it as a matter of right, there would be no limit to his applications. He might demand a repeated change of bail during the progress of the trial, and perhaps by these changes endanger the security of the adverse party. But notwithstanding these consequences might follow the admission of such an unqualified right in the party, yet, if the right exists, it must not be denied. But we do not think, that any such absolute and unqualified right exists. Nor is it essential to the security of the just rights of the party, that *such right* should exist. For it is to be presumed, that, upon all proper applications to the court for a change of bail, where it is necessary to the maintenance of the rights of the party, the application will be granted. Should the court, however, in the exercise of this discretionary power, deny a proper and just application, (which we think would rarely occur,) the party would not be without remedy. Upon a petition for a new trial and proof of a meritorious case, we entertain no doubt he would obtain relief. The result to which we have come upon this part of the case is, that the refusal of the county court to change the bail taken for the review was the exercise of a discretionary power vested in that court, and consequently is not subject to revision in this court. This exception, therefore, cannot prevail.

It is farther urged, that the charge was erroneous. The court instructed the jury, "That if they found, that the conveyance of the property from Cook to the defendant was made, on the part of Cook, in bad faith and with an intent to withdraw the property from the reach of his creditors and to avoid their rights, and that the defendant was privy to such intent and lent himself to Cook to aid him in withdrawing his property from the reach of his creditors to avoid their rights, and justified the same to have been made *bona fide* and upon good consideration, the defendant's case was within the provisions of the statute, and he was liable to the statute penalty, notwithstanding they should find, that the defendant paid a full and adequate consideration for the property." It was so held to be law by Lord Mansfield, in the case of *Cadogan et al.* v. *Kennet et al.,* Cowp. 432, upon the statute of Elizabeth, which is similar to ours.

The court in that case say, "That if the transaction be not *bona fide,* the circumstance of its being done for a valuable consideration will not, *alone,* take it out of the statute; that they had known several cases, where persons had given a fair and full price for goods, and where the possession was changed,—yet, being done for the purpose of defeating creditors, the transactions were held fraudulent and void; that the question in every case is, whether the act done is a *bona fide* transaction." The same doctrine was held by the supreme court of New-York, in the case of *Beals* v. *Guernsey,* 4 Johns. 352. It was so held by this court, in *Edgell* v. *Lowell,* 4 Vt. 405, and may be regarded here as the settled law upon this subject. It is the intent of the parties to the contract of sale, which determines the character of the transaction. The case at bar was so put to the jury by the court below, and we think correctly.

The result is, that we find no error in the proceedings of the county court, and consequently the judgment is affirmed.