## MINERVA McKUSICK vs. CITY OF STILLWATER.

### October 7, 1890.

**Eminent Domain—Compensation—Special Benefits.**—In condemnation proceedings, where a part of a distinct tract or parcel of land is taken for public use, special benefits may be considered, because the issue is as to the extent of the damage.

**Same—Condemnation for Street and Assessment of Damages and Benefits—Procedure.**—The legislature may, in a city charter, authorize proceedings for widening, opening, and grading a street to be conducted together as one improvement, and the same commissioners who assess benefits for such improvement may also be authorized to assess the compensation or damages for land appropriated or injuriously affected, and embrace the result of each proceeding in their report. But the condemnation proceeding is, in itself, a separate matter, and only such benefits can be considered and allowed therein as pertain to that branch of the improvement; and, for the damages awarded the land-owner in such proceeding, he is entitled to be paid in money. He cannot lawfully be required to offset the same against benefits assessed for the entire improvement.

**Same—Charter Provision for Deducting Assessments for Benefits from Compensation Awarded, held Void.**—A clause or provision.

in a city charter, requiring commissioners, after making a separate award of compensation for land taken or injuriously affected, and an assessment for benefits for the cost and expense of the improvement, to deduct from such assessment, as respects particular lots or parcels, the amount so awarded for lands condemned or injured, is unconstitutional and void.

Same—Void Provision Rejected—Objections to Assessment Proceedings held Waived.—But, when the remaining provisions are sufficient for the lawful prosecution of the improvement, an award and assessment may be made in pursuance thereof, and the clause providing for such deduction or offset may be rejected without impairing the validity of the proceedings. And, where a city charter provided that the report of their proceedings by such commissioners should be filed, and for notice and opportunity to all parties interested to be heard and to file objections to such report before finally acted on by the city council, with authority to the latter to confirm or annul the award or assessment, or send the same back to the same commissioners, saving to aggrieved parties a right of appeal to the district court, *held*, that any objections to the form of the report or proceedings of the commissioners in making the award or assessment must be taken in the manner pointed out by the charter, or they will be deemed waived.

Same—Omission of Preliminary Estimate by City Council—Waiver of Objection.—Under a clause in such charter providing that no omission, informality, or irregularity in or preliminary to making any special assessment shall affect the validity of the same where the assessment-roll has been adopted by the city council, and requiring such objections to be taken in the form and at the time prescribed by the charter, *held*, that an omission by the council to make a preliminary estimate of the cost of a proposed improvement before the assessment is made, must be treated as an irregularity merely, and the objection must be taken in the same proceeding.

Same—Residents of City may Act as Commissioners.—Under the charter of the city of Stillwater, residents and freeholders of the city may lawfully serve as commissioners to award damages and assess benefits for public improvements.

Cities—Official Newspaper—Publication of Notices Valid, though Charter not Complied with.—Where the proposition of the proprietors of a newspaper to publish the ordinances, etc., of the city was accepted, and such paper declared to be the official paper of the city, and is thereafter treated as such, and notices and proceedings under the charter are duly and regularly published therein, the omission to comply with

·a provision of the charter requiring the contract between the city and the
· publishers to be reduced to writing, and a bond to be executed by the
latter, will not invalidate such published notices and proceedings.

Plaintiff brought this action in the district court for Washington
county, to restrain the defendant from entering upon her land in
the city of Stillwater, to carry out the street improvement described
in the opinion. The defendant appeals from the judgment entered
on the report of Homer C. Eller, Esq., referee, before whom the ac-
tion was tried.

*Searles & Gail*, for appellant.

*Fayette Marsh*, for respondent.

VANDERBURGH, J. The plaintiff is the owner of the lots 5, 7, 9,
11, and 13, in block 6, in Thompson, Parker & Mower's second ad-
dition to Stillwater, having a frontage east on Martha street of 243
feet. On the 19th day of June in the year 1888, the common coun-
cil of the city adopted a resolution fixing the grade of Martha street,
and also a separate resolution directing that the same street be laid
out, graded, widened, condemned, and opened as follows, viz., from
the north line of Myrtle street to the south line of Mulberry street;
and the city engineer of said city was directed to make and present
to said city council a plat and survey of such improvement, showing
the character, course, and extent of the same, and the property nec-
essary to be taken or interfered with, the names of the owners of each
parcel, and such a statement as might, in his opinion, be proper to
explain such plat and survey, and the character and extent of the
proposed improvement, exclusive of the cost of condemning private
property. And thereafter, on or about the 7th day of August, 1888,
the city engineer reported to the city council a plat and survey as di-
rected by such resolution, which plat and survey contemplated the
widening of the street in question for a portion of the distance be-
tween Mulberry and Myrtle streets, including that upon which plain-
tiff's lots above described front, and also for the taking of a portion
of the same, with other property, for the purpose of providing slopes
deemed necessary for grading Martha street. The city council duly
approved, accepted, and adopted the report of the engineer, includ-

ing the plat and survey so made by him, and thereupon appointed three freeholders, qualified electors of the city, no two of whom resided in the same ward, as commissioners to view the premises, and award the amount of damages and compensation to be paid to the owners of the property to be taken or injured by such improvement, and also to assess the amount of such damages and compensation upon the lots and property to be benefited by such improvement, in proportion to the benefits to be received by each of the parcels, without regard to the cash valuation, etc., as prescribed by the charter. The commissioners so appointed thereupon took the prescribed oath, and after causing notice to be given by two publications in the Daily Gazette, a newspaper printed and published in the city of Stillwater, as provided by the charter, that said plat and survey were on file in the office of the city clerk for examination of all persons interested; that they would, on the 27th day of August, 1888, meet at the junction of Myrtle and Mulberry streets in said city, and then and there view the property to be taken and interfered with for the purposes of such improvement, and ascertain and award therefor compensation and damages, and view the premises to be benefited by such improvement, and assess thereon, in proportion to benefits, the amount required to pay the damages and costs necessary to the making of such improvement. In pursuance of such notice they met and proceeded to perform the acts therein mentioned, and duly prepared a report of all their proceedings in the premises in the matter of the award of damages and assessment by them made, and on the 25th day of September, A. D. 1888, presented the same to the common council of the city, after having previously given the required notice of their purpose so to do by publication in the Daily Gazette, before mentioned. Afterwards, at a regular meeting of the council held on the 16th day of October, the award and assessment so reported were duly confirmed by vote of the council. The referee finds that the council did not, prior to the appointment of the commissioners, nor until the 8th day of November, 1888, estimate or fix the cost of making such improvement, and that, in the award and assessment so made by the commissioners, and adopted and confirmed, there was included damages and compensation for injury to

private property, including that of the plaintiff, for taking a portion thereof for making slopes and fills, and there was also assessed against the abutting property the estimated benefits resulting from the laying out, grading, widening, and condemning of said street, and that no award was made to said plaintiff, or any one else, of any amount as damages or compensation for taking or interfering with her private property; but the estimated damage from such taking was offset against the amount assessed against such property as benefits resulting from such laying out, grading, widening, condemning, and opening of the street, and a final balance awarded to the city as due from each piece of property, such assessment and award being made as a single improvement. No appeal was taken by this plaintiff in such proceeding.

The facts, which are undisputed, will more clearly appear from the report itself, an extract from which is as follows: "After viewing the premises and hearing the evidence offered, the undersigned commissioners caused to be prepared a true and impartial appraisement and award of the compensation and damages to be paid each person whose property is to be taken or injured by the making of such improvement, as appears by columns headed, 'Supposed Owner and Description,' 'Lot,' 'Block,' 'Damages,' in Exhibit A, hereto attached; and where only a part of the property is to be taken or damaged by such improvement, and the remainder of the same is found by your commissioners to be benefited by such improvement, the undersigned, as such commissioners, in considering and awarding such compensation and damages, have also considered, estimated, and offset the benefits which will accrue to the owner of said parcel of property in respect to the remainder of the same property; and have awarded him damages, only for the excess of the compensation or damages over and above such benefits, as appears by columns headed 'Balance Due Owner,' in said Exhibit A, hereto attached. And the undersigned, as such commissioners, have assessed the amount of such compensation and damages so awarded, together with the cost and expenses of making such improvements, upon the land and property benefited by such proposed improvement, and in proportion to such benefit. But in no case have the undersigned, as such commissioners, assessed

any property exceeding the actual benefit to the lot or parcel assessed after deducting therefrom any damages or injury to such parcels which are less than the benefit, but have only assessed the excess. Such assessment appearing in columns headed, 'Supposed Owners and Description,' 'Lot,' 'Block,' 'Benefits,' 'Bal. Due City' in said Exhibit A. And the undersigned hereto attach, as a part and portion of their report, marked 'Exhibit A,' the said appraisement and award of damages and assessments of benefits, and beg further to report that the whole amount of such compensation and damages, together with the cost of making such improvement, does not exceed the actual benefit to the specific property subject to assessment. And the list hereto attached, being Exhibit A, contains the assessment made by the undersigned, as such commissioners, of the compensation, damages, and costs against the property herein mentioned, or so much of said compensation, damages, and costs as do not exceed the actual benefits of the property so assessed:

## " ' EXHIBIT A.

" ' Commissioners' assessment-roll and award of benefits, damages, costs, and expenses for laying out, grading, widening, condemning, and opening Martha street from Myrtle street to Mulberry street, in · the city of Stillwater, and condemning an easement upon the land adjoining the lines of said street for the necessary cuts and fills in grading the same, on the basis of one and one-half foot encroachment to every one foot cut or fill, according to the plan and profile therefor of the engineer of the city of Stillwater, approved by the city council of the city of Stillwater, August 7, 1888.

" ' RECAPITULATION.

| Total compensation allowed | $ 254.50 | Amount assessed | $2,339 |
|---|---|---|---|
| Total cost of improvement as per engineer's report | 2,084.50 | Amount not assessed | ——— |
| Total compensation, damages and costs | $2,339 00 | Total | $2,339 |

| Name of Owner, if known. | Description of Land. | Addition. | Lot. | Block. | Benefits. | Damages. | Bal. Due Owner. | Bal. to City. |
|---|---|---|---|---|---|---|---|---|
| Minerva McKusick. | Thompson, Parker & Mower's 2nd | " " | 5 | 6 | 61.92 | 2.00 | | 59.92 |
| " | " | " " | 7 | 6 | 72.00 | 2.00 | | 70.00 |
| " | " | " " | 9 | 6 | 72.00 | 2.00 | | 70.00 |
| " | " | " " | 11 | 6 | 72.00 | 2.00 | | 70.00 |
| " | " | " " | 13 | 6 | 61.92 | 2.00 | | 59 92 ' " |

The referee held the assessment void, for the reason that the proceedings for the condemnation of abutting property for slopes could not be so blended with those for the assessment of benefits for the entire improvement that the latter could be offset generally against the former, and an assessment made ratably against the specific parcels affected by the joint proceedings.

The provisions of the charter in respect to the duties of the commissioners in the premises, as found in section 6, c. 10, of the charter, are as follows, (Sp. Laws 1887, c. 6, § 37, p. 311:) "After viewing the premises and hearing the evidence offered, such commissioners shall prepare and make a true and impartial appraisement and award of the compensation and damages to be paid to each person whose property is to be taken or injured by the making of such improvement; but, if the remainder of the same property, a part of which only is to be taken or damaged by such improvement, shall be benefited by such improvement, then the commissioners, in considering and awarding compensation and damages, shall also consider, estimate, and offset the benefits which will accrue to the same owner in respect to the remainder of the same property, and award him only the excess of the compensation or damages over and above such benefits. The said commissioners shall then assess the amount of such compensation and damages so awarded, together with the expense and cost of making the improvements upon the land and property benefited by such proposed improvements, and in proportion to such benefits; but in no case shall the amount of such assessment exceed the actual benefit to the lot or parcel of land so assessed, *deducting therefrom any damages or injuries* to the same parcels which are less than such benefits, and *assessing only the excess*." It will be observed that the commissioners report a small amount of compensation due for damages to each lot. This they offset and deduct from the amount assessed against each in pursuance of the last clause of the charter above quoted.

Undoubtedly, the work of widening, grading, and opening a street may be treated as one general improvement, and may be authorized to be conducted as such. *Cook* v. *Slocum*, 27 Minn. 509, (8 N. W. Rep. 755.) And the same commissioners who make the assessment

for benefits may also assess the compensation for land appropriated or injuriously affected, and embrace the result of each proceeding in their report, as authorized by the charter in this case. But the condemnation proceeding is nevertheless a distinct and separate matter, and subject to the same legal conditions and restraints as in other cases. And only such benefits can be considered and allowed therein as pertain to that branch of the improvement. For example, if the improvement embraces the widening of a street, as well as the grading and opening thereof, then the commissioners, in estimating the net damages to a lot from the appropriation of the strip taken therefrom for such improvement, cannot lawfully consider and offset proportionate benefits for grading and opening the entire street in front of the lot, but only the benefits to that portion of the lot not taken, resulting from that branch of the improvement, as, for example, its increased value from a frontage on a wider thoroughfare. And this distinction is recognized by the charter, for the commissioners are required to consider the benefits in the condemnation proceedings separately, and we are to assume from the record that they discharged their duty, and complied with its provisions in this case.

In ascertaining the just compensation to which the owner may be entitled, special benefits are allowed, because the real issue is as to the amount of damage suffered. And so it may be found that the benefits equal or exceed the damage to a particular tract, in which case only the *excess*, if such there be, should be considered in the general or final assessment for benefits for the entire improvement. But if the damages in the condemnation proceedings exceed the benefits allowed therein, the land-owner cannot lawfully be compelled to offset the amount awarded therefor against the general assessment for benefits, for he is entitled to be paid therefor in money. Nothing can be better settled. But the clause of the charter allowing such deduction or offset may be rejected without impairing the effect or validity of the preceding provisions, which are in themselves sufficient for the purposes intended, and under the charter any deficiency in the assessment is to be paid out of the general fund. The report, in this case, on its face contained enough to warrant a lawful award. The plaintiff had notice of the filing thereof, in conformity with the

charter, which further provides, (Sp. Laws 1885, *c.* 10, § 4, p. 100, as amended, Sp. Laws 1887, p. 312:) "Such report shall, after its presentation to the city council, lie over until the next regular meeting of the council which shall occur at least one week after the reception thereof, at which time, or at any meeting, the city council may act upon such report, and *hear any complaint touching such award or assessment.* * * * The council may confirm such award or assessment, or either, or annul the same, or send the same back to the same commissioners for further consideration," etc. And by section 5, an appeal to the district court is provided for: "Any person whose property is proposed to be taken, interfered with, or assessed for benefits, under the provisions of this chapter, and who deems that there is *any irregularity* in the proceedings of the council or action of the commissioners, by reason of which the report of the commissioners ought not to be confirmed, * * * may, at any time before such award or assessment shall be confirmed by the city council, file with the city clerk, in writing, his objections to such confirmation, setting forth therein specifically the particular irregularities complained of; * * * and if, notwithstanding such objections, the city council shall confirm such award, the person so objecting shall have the right to appeal from such order of confirmation to the district court of the county of Washington, at any time within ten days after such order." The council may confirm the award or assessment, or *either*, or annul the same, and send the same back to the same commissioners for further consideration. And, upon appeal, the district court may confirm or annul the proceedings, and may appoint new commissioners "to reappraise such damages or benefits." Sp. Laws 1885, *c.* 10, § 5, pp. 103–4.

We think the plaintiff could consent to the "deduction" made in this case, and waive the objection to the award in respect to damages, and she will be deemed to have done so in this case by her neglect to file her objections or to take an appeal, as the charter provides. The condemnation proceedings were duly authorized by law, and were had before a competent tribunal upon due notice, and, for the error in the adjustment of damages, an ample remedy is provided in the charter.

Plaintiff is not, on this ground, entitled to an independent remedy by injunction.

2. The charter also provides that, after the city engineer has made his plat, survey, and profile of the proposed improvement, showing the character and extent thereof, and his estimate of the cost thereof, "the city council may cause such plat and survey to be modified or changed as it may deem proper, *and shall estimate and fix upon the cost of making such improvement when the assessment made for defraying the expense of such work or improvement is ordered, prior to the doing of such work or making such improvement.* When such plat and survey shall be finally adopted by the city council it shall be filed with the city clerk, and it shall be held to show correctly the character and extent of the improvement actually agreed upon and ordered by the city council." Sp. Laws 1887, *c.* 6, § 37, p. 310. It is objected that the council did not make any formal estimate, as above provided, upon the filing of the survey and estimate of the engineer. But the latter were filed and acted on by the council, and the commissioners duly appointed to proceed thereunder, which was equivalent to an adoption of the report as a whole. Besides, it is provided in section 16, *c.* 10, (Sp. Laws 1881, *c.* 92, p. 590,) of the charter, "that no omission, informality, or irregularity in or preliminary to the making of any special assessment shall affect the validity of the same, where the assessment-roll has been adopted by the city council. * * * And no variance from the directions herein contained as to the form or manner of any of the proceedings shall be held material, unless it be clearly shown that the party objecting was materially injured thereby, and *unless* such objections were taken *at the time and in the manner prescribed in this chapter.*" This objection was not so taken, and must be disregarded.

3. It was objected on the trial that all the commissioners were interested parties by reason of being residents and freeholders of the city of Stillwater, and that they were therefore disqualified for that reason. This question was considered and determined adversely to the plaintiff in *City of Minneapolis* v. *Wilkin,* 30 Minn. 140, (14 N. W. Rep. 581.)

4. It is further objected that the Stillwater Daily Gazette, in which the notices in these proceedings required by the charter were published, had not been duly constituted the official paper of the city, and that the publication was void. The statute is as follows: "The city council shall, at its first meeting in April of each year, or as soon thereafter as may be, cause the city clerk to advertise for proposals for publishing * * * the ordinances, official proceedings of the council, and other matters required in the charter * * * to be published in a public newspaper; * * * which proposals shall be opened at the next meeting of the council, and the contract for such publishing awarded to such newspaper bidding the lowest therefor, *which paper shall be declared the official paper of the city.* * * * *Provided, further,* that the proprietor or proprietors of such paper *shall enter into a written contract* for the performance of the duties required of such proprietor or publisher, and give bond in the sum of *five hundred dollars, with two satisfactory sureties, to be approved by the city council, conditioned for the faithful performance of such contract.* The newspaper so designated shall be and remain the official paper of said city, and the contract and bond aforesaid shall remain in force for the term designated, and until the city council shall designate another paper as the official paper of the city." Sp. Laws 1887, *c.* 6, § 42, p. 318. The resolution designating the Gazette as the official paper of the city was adopted July 15, 1886, but there was no bond or formal contract entered into, and no subsequent designation of the same or any other paper was made. It seems, therefore, that publications had been made therein as if it were the regular official paper of the city, and it was treated as such. No question is made but that the paper was properly designated and selected as the official paper, or that the notices and proceedings required to be published under the charter were not duly published. But the contract otherwise valid was not reduced to writing, and a bond for the faithful performance of the contract was not given. We do not think the omission of these formalities, which were evidently intended for the benefit and protection of the corporation, rendered the published notices invalid or ineffectual as to third persons or the public; for, conceding that, as between them and the city, the publish-

ers or proprietors were not lawfully qualified or authorized to make the· official publications in·their paper, yet the paper was· *in fact* the official paper and employed as such for several years, and there is no reason why the same rule should not apply and govern as in the case of the acts of *de facto* officers. *Wright* v. *Forrestal,* 65 Wis. 341, 351, 352, (27 N. W.·Rep. 52.)

Judgment reversed.